This event pleases the court. My name is Warren Markowitz. I am a fellow counsel for Todd Engel. Mr. Engel is currently serving 168 months at USP Lompoc for his participation in the prior Bundy protests that this court just recently heard. Our appeal surrounds three specific issues that we'd like this court to address and review. One is the imposition of standby counsel for Todd Engel as a structural defect in his Sixth Amendment rights. The second is the denial of a new trial motion based upon the dismissal issued by the court for the tier one defendants in what I believe will be trial three, which would be the one case that was just recently heard by this court. And of course, a review and possibly dismissal of the imposition of financial obligations under restitution based upon an improper calculation of the matter for, by the, excuse me, by the government. Beginning with the first one, the imposition of standby counsel as a structural error, the court effectively denied Mr. Engel his right to control and direct his trial as it saw fit. The action was taken sui sponte, that the appellant couldn't continue because the grounds for the dismiss, the revocation of his Sixth Amendment right to self-representation was based on the court's fear of a mistrial. The court conducted promptly a Feretta hearing. They reviewed the materials with Mr. Engel. They addressed the issues of whether or not he understood the procedures, what his education was, what his issues facing him were, what the potential downfall were, what the benefits of proceeding with counsel would be. And he chose to move ahead without it. The court accepted that. Counsel, can I focus you, this is Judge Watford, can I focus you on one specific aspect of this issue that you've raised? And it's this. Yes, sir. Ordinarily, I would agree, I would be inclined to agree with your position that the mere asking of one improper question by someone who is representing themselves wouldn't on its own, under normal circumstances, be grounds for revocation of their right to represent themselves. But I guess in this instance, as I understand it, what especially concerned the court was that the very question that was posed was the subject of prior discussions between the court and, I guess, your client. And what I'm not clear on, I guess, is how specific was the court's direction to your client that he would not be permitted to get into the, what was it, the criminal investigation of Agent Love? Was that what the, that's what the ruling was? I think, to be frank with the court, I'm not 100% certain on how deep and how broad the conversation went with him outside of potentially saying, we discussed this, we're gonna move forward with it. I think what the court should look at in this respect, and I think this is extremely important, is that one of the things that Ferreira doesn't stomp on is the lack of judicial or legal experience that an individual will have, the lack of the education that a person has when it comes to legal matters and so forth. Counsel, help me- It is quite possible. Counsel, help me with the questions I put to you, which is- I'm trying to, your honor, forgive me. Hold on a second. Can you listen to my question, please? Yes, sir. I'm asking you to fill me in on the record. What does the record say about how specific the conversations prior to your client asking this question, how specific were the discussions that the court had with your client about what he was and was not permitted to do with respect to the question that he ultimately posed? I apologize, I cannot specifically answer that question. I cannot direct a specific issue or a specific section for you. I apologize for that. Okay, on the assumption that, and we can look back and read the record, on the assumption that it was quite clear to your client that this question was not permitted, he nonetheless asks the question. He asks about the criminal investigation that he knew did not exist. On that assumption, was it improper to relieve him of his ability to represent himself for the rest of the afternoon? Yes, I believe it was improper, your honor. Because? I believe it was improper because, again, the issue is there could have been, had Mr. Rangel understood the ways around issues, bringing matters to the attention of the court for alternative purposes, not necessarily for the issue in which he was discovered or discussing. Also, there were opportunities, and we raised this in a brief, that there really were a limited amount of constitutional issues in which a judge may remove a defendant from representing himself. I don't believe his action, this one particular question, wound up to be sufficient to be disruptive, where she had to silence him, short of saying, no more questions here, admonish the jury. She actually went to the point during trial, the court actually went to the point and said, we're not even gonna discuss this with the jury, I'm already doing review on this trial. I think the issue there is, she was so afraid of what might happen. And it's respectable. This was a complicated matter. This is a complicated case. There were defendants who were split to three different groups because it was so many of them. But I think the issue should have been, if Mr. Rangel was told, you need to sit down, chill, and have your standby counsel now take the place, it would have been necessary for the court itself to inform the jury why things were happening. That issue alone, to be shut up, sit down, and have the standby counsel placed in his position, who also challenged the court at that time about him being put in place. I think the prejudice there alone made him look like he was trying to wiggle out of something. Now, let me ask you this. As I hear the argument you're now making, it sounds like a harmless error argument. That is to say, I think I just heard you say that if the judge had explained to the jury why he was having standby counsel do the work for the rest of the afternoon, that that would have been okay. Is that right? Is that what you're saying? Potentially. And the reason why I say potentially not, yes, under general circumstances, I would tend to agree with you, your honor. But under these particular circumstances, I don't think the harmless error standard would apply because the issue involving standby counsel at the very beginning was that standby counsel was not there for the benefit of Mr. Engel for assistance, for review, for understanding, for direction, for support, but for the benefit of the court and the court alone. And the judge, once she appointed standby counsel, specifically made those statements to him. Well, the reason I'm asking the question is that denial of self-representation, right? That's structural error. I mean, is it neither right or not? So I'm not sure why you're saying it would have been okay if the reason for her doing it was explained, meaning it either was or was not a violation of his right to represent himself. And if it was a violation of that right, then harmless error is irrelevant. I believe the issue is structural under the circumstances you described, even if we appointed, even if that, even if Mr. Engel was an attorney making the argument and he stepped over a line and a judge during a trial admonished him, that would be acceptable. On the other hand, in this instance, because he's representing himself, I think the vacuum that was created by him being removed so abruptly goes to the structural error, goes to the harm that was caused because he was also not only denied the right to speak at that point to the jury or to the court, but everything that he wanted to do therefore had to be filtered through the standby counsel, which in effect denies him his right to manage his own trial, which is one of the Sixth Amendment, the cornerstones of the Sixth Amendment itself. And I think that's where the structural error becomes set in stone. I think that is the issue that we have, that this court should really concentrate on when it makes this decision. I see I'm almost at my five minute mark. I believe that this is the issue that I would like the court to concentrate on. The Brady material, as far as I can understand, and as far as I see, should be appointed and should be applied to Mr. Engel, but I believe that the Sixth Amendment violation here is the controlling one. So does that mean you want to hear from the other side and then you've saved the rest of the time? Yes, sir. Thank you, Your Honor. May it please the court, Adam Flake for the United States. If I could start out by answering Judge Watford's question. I laid out in my brief on page 14, a little bit of the procedural history of the issue of impeaching Dan Love. What happened was, subsequent to the events in this case, Dan Love was the subject of an OIG investigation for things that he did the year after at Burning Man. And the defendants very much wanted that, to be able to introduce that in trial in keeping with their general trial strategy of making the BLM look bad. And so they filed a motion, they filed a motion asking for the OIG report and there was some litigation over it. The government said that it was not going to call Dan Love. And when the government said that, the defendants subsequently filed a motion to be allowed to call Dan Love for the purpose of impeaching him, for bringing up this OI, to bring in the fact that he was subject to an OIG investigation. And also I wanna be clear, it was an OIG investigation. The fact that, the claim that he was under criminal investigation, that was never talked about, that was out of left field. But the, so there was litigation over whether they could call, whether the defense could put Love on the stand to make a issue out of this subsequent investigation. And the court ruled against them. Now, the court did not, I will concede, the court never specifically told Engle, you are not allowed to ask whether Love was under criminal investigation. It didn't think to, because that was out of left field. But it certainly made clear that Engle, that Engle or no other defendant, neither Engle or any other defendant was coming into, was going to be allowed to testify, excuse me, to call Love to testify. And so that's as clear as it got. The judge, I'm not arguing that the judge specifically sat Engle down and said, hey, you may not ask. If Engle, the transcript after Engle asked the question, certainly suggests that both the district court and the AUSA who objected and called to the court's attention the problem, not only made the objection, but then objected and said, I think you ought to go farther and you ought to disqualify him from representing himself. Certainly made it sound as though there was a direct order that Engle would have known of, that this was a very conscious, you know, specific intent problem. And I think you've just told us correctly, because I looked for it. I couldn't find anything here in this record that suggests that there's any kind of a direct order other than a refusal to allow the defendants to call Love's, so that they could then impeach him with the thing. So given that we have a non-lawyer here who has one question for which there's an objection that is sustained, how is this a proportional response under any of the cases dealing with Faretta rights? Well, your honor, I think that the judge found that it was clear to Engle that that area was not allowed to be explored. And I think that under the circumstances, this court can defer to that finding, because there was a great deal of litigation over Love. The court read the transcript. Counsel, I know you're a very experienced AUSA. Has anybody in any trial that you've ever been involved in asked a question that they probably shouldn't have asked because the district court had told them not to? Doesn't that happen all the time, counsel? Yeah, it happens all the time. Of course it does. Of course it does. That's an honest answer. Your honor left me very little choice. No, of course it does. But I think that the circumstances that made this case special were the, first of all, the length that the trial had gone on were 25 days in, the amount of litigation that had happened on this specific issue of Love, the total falsity of the question. Why doesn't the district court just turn to the jury and say, ignore the question? I'm instructing you to ignore that evidence. It happens all the time. I mean, I think the court would have been within its discretion to do so, but I want to emphasize that the finding the district court made here was based on her observation of how the trial played out. I admit that I was not there personally. Counsel, in any of the Ferretta cases where we've had people who have engaged in really serious misconduct, misbehaving, disrespect to the district court and so on, where we have deprived them of their Ferretta rights. Do you know of any case in which somebody's Ferretta rights were suspended rather than taken away? He was allowed to come back and be his own lawyer. It just was taken away from him temporarily. No, your honor. I don't know of any case like that. I had to make clear because there was some discussion with opposing counsel. If this was error, it was structural error. The government is not arguing that it was somehow harmless. But the fact that the judge reinstated him, I think goes to show that the judge took the revoking of his rights very seriously. She struggled with it. She found compelled to do it. There's something in the colloquy that followed the improper question where she says that she just doesn't feel like she could risk it. She said, Mr. Engel has made clear to me that he's not going to follow my orders. I'm not going to risk it. I'm not going to let him cause me- Let me ask you about this question of risk. What was the threat, if there even was a threat, that if he were allowed to continue as counsel representing the rest of the government, that he would ask further questions, that he would disrupt, that he would do various things that the judge had some reasonable ground to believe would be the problem? Well, your honor, I think the judge based its finding on her observation of him. She talked about, she said, he's made clear to me that he's not going to follow my orders. I observed him as he, I'm not quoting, but I observed him as he did this. He was very proud of himself for sliding that in. He was pleased with himself for being able to slide something by me. Oh, I get all of that. This is a trial that's gone on for a very long time as a number of defendants. And I would be quite sympathetic to an argument if it were borne out by the facts that there's all kinds of stuff that he might do that would jeopardize the case as to the entire case. Did she have any reason to think that there were, were there other love type questions that were lurking? And what were they? I mean, I don't know about any future questions. I can't imagine what other areas that didn't come out at trial. I can't guess at it. He did have- The reason I'm focusing on this is you called, you talked about risk. So what's the risk? The risk, I guess the judge found was, I mean, I don't guess, I think this is what she said. The judge found, Mr. Engel has indicated to me that he is not going to obey my orders and that he would continue to engage in activity that would risk her needing to declare a mistrial. That was the risk she identified. She said, I find that, sorry, was somebody talking? I can't hear very well. But that's more specific if it's a risk of, there are two different things going on. Risk of not obeying my orders. And the other one is risk of not obeying my orders, which produces a risk of a mistrial. That is to say a risk that he's going to start asking questions, trying to get evidence in that is so prejudicial to the case that we're going to have a mistrial. And I'm having trouble seeing the risk that we're going to get a mistrial, even if there is further misbehavior. Can you help me on that? Your Honor, I think that she was worried about the second risk. This is, I mean, this case is, the panel is obviously aware.  I'm sorry, could Your Honor repeat the question? I can't hear very well. I think that as a given, that the district judge was worried about the risk of a mistrial if Mr. Engel were allowed to continue to represent himself for the rest of the afternoon. But I'm trying to figure out realistically, what is the risk of a mistrial? What was coming up in the afternoon where he might have done things that would produce a mistrial? Your Honor, he had other, I mean, I think another witness did testify he would have had another opportunity to cross-examine a witness. And was there, were there certain questions that he had been forbidden to ask of this witness? Your Honor, I don't know the answer off the top. I'm not able to speculate about all of the various different ways that it could have gone wrong. I don't know of any particular issue, to be clear. I don't know that there was some issue lurking, but I'm not sure if the court knew that this issue was lurking either. I mean, the question about a criminal investigation had absolutely no basis in fact, but there it was sitting in the judge's lap and she was forced to. Can you just, going back to the answer you started with, or the colloquy you started with, in terms of what's the most specific thing the judge said in that discussion before about the OIG investigation and all that? What's the most specific thing that she said that you think constitutes a direct order to Mr. Engel that he should have known this question was absolutely forbidden in any judicial case? Well, Your Honor, I think it's necessary to look at it in terms of what specifically the defense wanted to talk about and the judge's response. And in the defense's motion, they specifically said, we wanna get Love on the stand. We wanna ask him about this OIG investigation to impeach him. And the judge, I mean, I can't off the top of my head quote the judge's exact wording in her ruling, but she said, no, you may not do that. You may not call Love to bring up this subsequent thing that the subsequent investigation. And so that's as specific as it was. She didn't go ahead and say, you may not also claim that he was under criminal investigation in your question or anything else. Don't our cases ordinarily require the judge before taking the fairly drastic step of revoking someone's right to represent the country? For something like this, wouldn't the response normally be, you know, objections to saying, you know, at the next, Mr. Engel, I am telling you, anything like this, you will not be permitted to, is that, is there some requirement ordinarily that you give this person some warning? Because as a lay person, how would you know that if I answer, if I ask one improper question, it's game over? Your Honor, there are cases that talk about that, that the Allen, the Illinois versus Allen case talks about, you know, giving a warning. But I think those are more relevant to the sort of, when defendants are engaged in bizarre antics and being disruptive and speaking out of turn and things like that, and they need to be told, hey, you're only allowed to talk when it's your turn to talk, and then a warning is appropriate. But in this circumstance where, you know, he certainly had been warned that he has to comply with the court's orders and the rules of evidence, that was part of the Faretta colloquy. But in this circumstance where he does something that the court found that he knew he wasn't allowed to do, I don't think that, I don't think there's a rule that says a defendant gets one free shot at creating a misconduct. This is not quite the same situation, but it strikes me as at least analogous if Mr. Engle had been a lawyer representing a client and had asked an improper question, precisely this question with precisely this background, the district judge would, I expect, be quite unhappy. And the district judge might very well say, we're gonna have a contempt hearing on this, but it would be very unusual for the district judge with one improper question to say, you are off of this case, and I can see that there's another lawyer willing to come in and do this, but you're gone. So if a normal response with an educated lawyer would probably be contempt, rather than saying you cannot do any, you cannot act as a lawyer or anything further, it strikes me as quite a severe sanction to do this to a layperson to say, I'm depriving you of your constitutional right to represent yourself when there's been no prior bad question, there's been no prior warning. If you ask a bad question, you're gone, and this advisory council is not starting to represent you. Your Honor, to be honest with you, I don't actually know, I have not been involved in this, I have not been involved with a situation where a lawyer gets held in contempt for a bad question or kicked off a case or anything like that, but I think that the, just looking at the circumstances here where the court is doing what she needs to do to control her courtroom and make sure that the trial proceeds without needing to declare a mistrial, I think that, I mean, it was certainly a harsh sanction, but the court felt like it was the appropriate prophylactic measure to make sure that he, that Mr. Engel wasn't allowed to subvert the trial. Okay. Any further questions from the bench? No? Thank you very much, and there's been some time- Thank you. Mr. Markovits for your time. Thank you, Your Honor. It is, I think one of the issues that we should go back to, and I appreciate, Your Honor, you had mentioned the similar question I had brought up about whether or not an attorney would be the one who would get into trouble for such a circumstance. To add a little gravity, Mr. Flake, maybe you should try private practice because I know one time or another, a lot of us get into trouble because of that, because we try and stretch the envelope as much as possible. In this instance, the fear of a mistrial has to come with the authorizations of a forever hearing. Knowing that we're putting somebody in play that does not have the experience, the education, the background, the understandings, and maybe even some basic law and order understanding that a mistrial may be one of the things a judge needs to deal with. And to use that as an excuse to rip him, to rip the right for him to run his own trial from him, I think goes back to the structural error issue. I think, in my opinion, and in our briefs, I think we put that forward to the point where that's the matter that we'd like this court to address and we believe that that's the one that's going to be, result in this conviction being overturned. I'd like to present myself to the court for any other additional questions they may have, but I think I've made my points at this point. I don't wish to take any more time. That's not necessary. Any further questions from the bench? No. Thank both sides for their helpful arguments. The case of the United States v. Engel is now submitted and that concludes our session for this morning. And we will now leave Las Vegas. Your Honors, thank you very much for your time and your courtesy. Have a good day. Thank you very much. This court for this session stands adjourned.
judges: W.fletcher, Bybee, Watford